UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------x
BEST CONCRETE MIX CORP. and
DAME REALTY LLC,

                Plaintiffs,

-against-

LLOYD'S OF LONDON UNDERWRITERS,
LLOYD'S OF LONDON, VIP MARINE
SERVICES, INC., JULIAN TRIFAN and
TILCON NEW YORK, INC.

                Defendants.

----------------------------------------x

**MEMORANDUM AND ORDER**
Case No. CV-04-2277 (FB)(RL)

*Appearances:*
*For the Plaintiffs:*
DAVID S. GARY, ESQ.
Law Offices of Michael F.X. Manning
100 Baylis Road, Suite 300
Melville, NY 11747

*For the Defendants:*
SIMON HARTER, ESQ.
304 Park Avenue South, 11th Floor
New York, NY 10010

**BLOCK, Senior District Judge:**

        Best Concrete Mix Corp. ("Best") and Dame Realty, LLC ("Dame") (collectively, "plaintiffs"), filed suit in state court against Lloyd's of London Underwriters, Lloyd's of London (collectively, "Underwriters"), VIP Marine Services, Inc. ("VIP"), Julian Trifan ("Trifan"), and Tilcon New York, Inc. ("Tilcon"), seeking a declaratory judgment that plaintiffs are entitled to coverage under an insurance policy (the "policy") issued by

Underwriters to VIP, under which Best was an additional insured.[1] Plaintiffs' state court action arose out of a suit filed by Trifan against plaintiffs seeking damages for injuries sustained by Trifan while performing construction work for Best. The policy contains an arbitration clause providing for arbitration in London, United Kingdom, of all disputes arising in connection with the policy. On June 1, 2004, Underwriters removed plaintiffs' action to this court pursuant to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 1517, 330 U.N.T.S. 3 ("the Convention"), which gives district courts jurisdiction over actions relating to certain commercial arbitration agreements that are not entirely domestic in scope.[2] Underwriters now move for an order staying the litigation and compelling arbitration in London pursuant to the terms of this arbitration clause. Plaintiffs oppose the motion on the grounds that (1) they were not signatories to the policy; (2) the arbitration clause does not encompass the indemnification dispute; and (3) the Court should, in any event, refuse to compel arbitration on equitable grounds. For the reasons set forth below, the Court determines that the action was properly removed and grants defendants' motion.

---

[1] Plaintiffs' action was subsequently discontinued against Trifan and Tilcon.

[2] The Convention is implemented by Chapter Two of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. 9 U.S.C. § 202 defines an agreement arising under the Convention as "[a]n arbitration agreement . . . arising out of a legal relationship, whether contractual or not, which is considered as commercial," and further provides that "[a]n agreement . . . arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states."

2

I.

The following relevant facts are culled from the parties' papers and statements at oral argument; they are, for purposes of the instant motion, undisputed:[3]

Best, Dame and VIP are corporations organized under the laws of New York, with their principal place of business in New York.[4] Best hired VIP to build a dock at premises owned by Dame in Queens, New York; VIP agreed with Best that VIP would obtain an insurance policy to cover VIP for any injuries or accidents occurring during the course of the construction and that Best would be an additional insured under the policy. Best did not impose any conditions on VIP's choice of insurer.

VIP chose to obtain the required insurance through Larsen Global Marine, Inc. ("Larsen"), a New Jersey-based insurance broker. Larsen, acting as what is known in the industry as a "producing broker," contacted Besso Limited ("Besso"), a London-based broker, regarding the coverage. Besso, in turn, acting as a "placing broker," requested a quote from Osprey Underwriting Agency Limited ("Osprey"), a London-based agency authorized to provide coverage on behalf of Underwriters. When Besso agreed to the

---

[3] Issues of arbitrability may require the Court – or, if demanded by the party resisting arbitration, a jury – to resolve disputed facts, but only if "there is a [genuine] dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). Because Underwriters' motion to compel can be decided based solely on undisputed facts, such fact-finding is not necessary here.

[4] According to plaintiffs, Dame is a limited partnership made up of members of the Emmanuele family; a member of the Emmanuele family also serves as Best's president. Although – since it does not appear that Dame was added as an additional insured to the policy issued by Underwriters – it is not entirely clear what rights Dame seeks to assert with respect to that policy, the Court will refer to Best and Dame together as "plaintiffs."

3

quote, Osprey bound the coverage and then issued a certificate of insurance – which included a copy of the policy – to Besso. The entire transaction, including payment of premiums, took place in London between Besso, as agent for VIP, and Osprey, as agent for Underwriters.

Larsen also issued a certificate of insurance. In addition to confirming the coverage and Best's status as an additional insured, Larsen's certificate recites that the coverage was contained in "[Policy Number] JL417002R" and underwritten "100% with Lloyds of London Underwriters through Osprey Underwriting Agency/Besso Ltd., London." Affirmation of David S. Gary, Ex. A.

In addition to identifying VIP as the "Named Insured" under the policy, the policy contains a clause titled "Additional Insured Endorsement," which provides that "if required by contract, any person, firm or organization is included as an Additional Insured but only with respect to operations performed by the Named Insured or to acts or omissions of the Named Insured in connection with the Named Insured's operations." Affirmation of Levent Osman, Ex. A, at 10. The policy also contains the subject arbitration clause, which provides that

> Notwithstanding anything else to the contrary, this insurance is subject to English law and practice and any dispute under or in connection with this insurance is to be referred to arbitration in London, one Arbitrator to be nominated by the Insured and the other . . . on behalf of Underwriters. The Arbitration shall be conducted pursuant to the exclusive jurisdiction of the English High Court of Justice. In case the Arbitrators shall not agree, then the dispute shall be submitted to an Umpire to be appointed by them. The award of the Arbitrators or the Umpire shall be final and binding upon both parties. In the event of a conflict between this clause and any other provision

4

> of this insurance, this clause shall prevail and the right of either party to commence proceedings before any Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.

*Id.*, Ex. A, at 23.

Plaintiffs allege that they never received a copy of the policy or of the certificate of insurance issued by Osprey to Besso. They do not dispute, however, that they received the certificate issued by Larsen, which, as noted, referenced the policy by number and identified its underwriters. Best voiced no objection and did not ask to see a copy of the policy.

## II.

### A. Applicable Standards

"The Federal Arbitration Act ["FAA"] creates a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (2d Cir. 2001) (citations and internal quotation marks omitted). "Arbitration agreements subject to the Convention are enforced in accordance with Chapter 2 of the FAA." *Id.* (citing 9 U.S.C. § 201). Under this chapter, if the subject matter of an action relates to an arbitration agreement falling under the Convention, a party may remove the action to federal court and seek to compel arbitration in accordance with that agreement. *See* 9 U.S.C. §§ 205, 206. The Second Circuit has held that an arbitration agreement exists within the meaning of the Convention, and that removal to federal court of an action relating to that agreement is therefore proper, if "(1) there is a written agreement; (2) the writing provides for arbitration

5

in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *U.S. Titan*, 241 F.3d at 146 (citations omitted). "Upon finding that such an agreement exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement." *Id.*

**B. An Agreement to Arbitrate Exists within the Meaning of the Convention**

With respect to the first criterion, plaintiffs argue that the policy, although in writing, cannot constitute a "written agreement" within the meaning of the Convention as applied to them because they were not signatories to the policy. The Court disagrees.

While "[a]rbitration is a matter of contract" and "a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit," *Merrill Lynch Inv. Managers v. Otpibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003) (citation and quotation marks omitted), "[i]t does not follow . . . that . . . an obligation to arbitrate attaches only to one who has personally signed the written arbitration provision." *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995). Under the theory of estoppel, "a company knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." *Mag Portfolio Consultant, GMBH v. Merlin Biomed Group LLC*, 268 F.3d 58, 61 (2d Cir. 2001); *see also American Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 353 (2d Cir. 1999); *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 418 (4th Cir. 2000) ("[A] party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently

6

maintained that other provisions of the same contract should be enforced to benefit him....To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."). In order for estoppel to bind a non-signatory to an arbitration agreement, the non-signatory must receive a direct benefit from the contract containing the arbitration clause; a benefit will be deemed indirect where "the nonsignatory exploits the contractual relation of parties to an agreement but does not exploit (and thereby assume) the agreement itself." *Merlin Biomed*, 268 F.3d at 61.

This principle is equally applicable to written agreements under the Convention. *See Smith/Enron*, 198 F.3d at 97-98; *see also Borsack v. Chalk & Vermillion Fine Arts, Ltd.*, 974 F. Supp. 293, 301 (S.D.N.Y. 1997) ("[O]nce a party establishes that ... a signed writing exists, the general rules of contract law apply to determine which parties are subject to arbitration. . . . The [Convention's] writing requirement does not foreclose the application of the ... principles under which nonsignatories sometimes can be obligated by ... agreements signed by others"); *International Paper*, 206 F.3d at 418 n.7 ("As we have previously recognized, the estoppel doctrine also applies to nonsignatories to arbitration agreements governed by the Convention.").

By seeking to enforce its indemnification rights as an additional insured under the policy, Best must also be bound by its arbitration clause because it wishes to avail itself of the protection and direct benefits afforded by the policy.

The Court recognizes that a number of cases in this circuit applying the estoppel theory involve non-signatories that failed to object to an arbitration clause despite

7

having actual knowledge of the contents of an agreement. *See, e.g., Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1064 (2d Cir. 1993). Nonetheless, even if Best had not actually seen the policy before initiating its declaratory judgment action, it is surely chargeable with knowledge of its contents; the certificate issued by Larsen identified the policy by number and put Best on notice that it had been issued in London by Underwriters. Despite such notice, Best does not claim that it requested and was denied a copy of the policy.

It is understandable that Best may never had contemplated that insurance for a small-scale, local construction project would lead to a coverage dispute subject to arbitration in London. Best was perfectly capable, however, of protecting itself against such unintended consequences, either by contractually limiting VIP's choice of insurers *ex ante* or by objecting to VIP's choice *ex post* when presented with the certificate of insurance from Larsen; such measures are commonplace when dealing with contractors. *See, e.g., Boyette v. Algonquin Gas Transmission Co.*, 952 F. Supp. 192, 200 (S.D.N.Y. 1997) (construing contract stipulating that "Contractor shall carry [liability insurance], at its own expense, *with insurance companies acceptable to [Owner.]*" (emphasis added)). At the very least, Best could have requested a copy of the policy and informed itself of its rights and obligations thereunder before allowing VIP to proceed. By failing to take such protective measures, and by now seeking indemnification under the policy, Best is estopped from parsing from the policy the subject arbitration clause, provided the remaining criteria under the Convention have been met.

With respect to the second and third criteria, the parties do not dispute that

8

the United Kingdom, the location for arbitration designated by the policy, is a signatory to the Convention, nor that the subject matter of the agreement, an insurance contract, is commercial.

With respect to the fourth criterion, an agreement is "entirely domestic in scope" only if it "aris[es] out of . . . a [legal] relationship which is entirely between citizens of the United States," 9 U.S.C. § 202; even an agreement between U.S. citizens falls under the Convention if it "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." *Id.* Only where an agreement satisfies both conditions will it be deemed "entirely domestic" and, therefore, outside the scope of the Convention. *See Jones v. Sea Tow Services Freeport N.Y. Inc.*, 30 F.3d 360, 365 (2d Cir. 1994) (holding that salvage agreement between U.S. citizens was not subject to the Convention because it had no reasonable relation to any foreign state). Here, although plaintiffs are U.S. corporations seeking coverage for an accident occurring in the U.S., the individuals from whom they seek the coverage – Underwriters – are in the U.K. Moreover, the negotiations culminating in the issuance of the policy took place entirely between British firms (Besso and Osprey) in London. These factors demonstrate that the agreement is not entirely domestic in scope.

## C. The Arbitration Agreement Encompasses the Dispute

The indemnification dispute falls within the scope of the arbitration clause. "In light of the strong federal policy in favor of arbitration, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an

interpretation that covers the dispute. Doubts should be resolved in favor of coverage." *Smith/Enron*, 198 F.3d at 99 (citation and internal quotation marks omitted). In determining whether a particular claim falls within the scope of an arbitration agreement, the court looks to the factual allegations in the complaint, rather than the legal causes of action asserted. *See id.* "If the allegations underlying the claims touch matters covered by the parties' . . . agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (citation and internal quotation marks omitted).

The present arbitration clause is broad, providing for arbitration of "any dispute under or in connection with this insurance," Affirmation of Levent Osman, Ex. A, at 23, and a dispute over plaintiffs' entitlement to indemnification as an additional insured under the terms of the policy is clearly a dispute "under or in connection with" that policy. *Id.* Although the arbitration clause refers only to the policy's "Insured," the Court construes this to encompass both the "Named Insured" under the policy and the "Additional Insured[s]" that the policy provides may be added.

Finally, there is no merit to plaintiffs' argument that it would be inequitable to enforce the arbitration agreement because (1) plaintiffs were not aware of the arbitration clause until after they filed suit, and (2) arbitration of the claims in London would create "inconvenience, expense, and uncertainty" for them. Pl. Mem. in Opp'n at 10. As discussed above, Best was aware that the coverage arranged through VIP merely added Best as an additional assured to VIP's own insurance policy, and the failure to inquire as to the terms of that policy prior to accepting or seeking to enforce its benefits is not an equitable ground for relieving plaintiffs of its concomitant burdens; furthermore, it is not

fundamentally unfair for Underwriters, who insure parties located around the world, to seek to arbitrate disputes arising in connection with their insurance policies in London, their place of business. *See Milgrim v. Backroads, Inc.*, 91 Fed. Appx. 702, 704-05 (2d Cir. 2002) (citing *Carnival Cruise Lines v. Shute*, 499 U.S. 585, 595 (1991)) ("Requiring the various customers [a party] does business with to agree to arbitration . . . where it is located is not fundamentally unfair."). In seeking to escape resolution of a dispute in a location designated by such a party, the litigant seeking to avoid the effect of that designation must make a "strong showing" that "enforcement would be unreasonable and unjust." *Karl Koch Erecting Co., Inc. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659-60 (2d Cir. 1988) (citations and internal quotation marks omitted). Plaintiffs' conclusory and unsupported statement that arbitration of this dispute in London would be inconvenient and expensive is not sufficient to demonstrate that enforcement of the arbitration clause would be unreasonable or unjust.

### III.

Defendants' motion to compel arbitration is granted and the litigation is stayed pending its outcome.

**SO ORDERED.**

FREDERIC BLOCK
United States Senior District Judge

Brooklyn, New York
February 8, 2006